IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *v.* | : | CRIMINAL NO. |
| | : | NO. 1:12-cr-285-WSD |
| JOSHUA THOMAS HILL | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Richard S. Moultrie, Jr. and Phyllis Clerk, Assistant United States Attorneys for the Northern District of Georgia, and submits the following Sentencing Memorandum to address certain applications of the United States Sentencing Guidelines Manual included in Defendant Joshua Thomas Hill's Pre-sentence Report.  First, the Court should calculate a base offense level of 30 in the Defendant's case pursuant to United States Sentencing Guidelines Sections 2X1.1 and 2G1.3(a)(2), as the Pre-sentence Report now provides.  Second, the Court should apply a two-level enhancement for use of a computer to solicit persons to engage in unlawful sex acts with a minor under Section 2G1.3(b)(3)(B) of the Guidelines.  And the Court should apply a two-level enhancement based on the Defendant's role in the offense as an

1

organizer, leader, manager, or supervisor under Section 3B1.1(c) of the Guidelines.

## I.
## INTRODUCTION

First, the Court should calculate a base offense level of 30 in Defendant Joshua Thomas Hill's ("Hill") case under Sections 2X1.1 and 2G1.3(a)(2) of the Guidelines, as the Pre-sentence Report provides.  Hill pleaded guilty to conspiracy to commit child sex trafficking, in violation of Title 18, United States Code, Section 1594(c).  Because there is no Guideline that expressly covers this conspiracy offense, Section 2X1.1 of the Guidelines requires that the Court apply the base offense level for Hill's substantive conduct under Section 2G1.3(a)(2).

Second, the Court should apply an enhancement under Section 2G1.3(b)(3)(B) of the Guidelines because the offense involved use of a computer or interactive computer service to entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with a minor.  In this case, O.M., on at least one occasion, spoke directly by cell phone with a customer who called to arrange a date with her based on the defendants' internet advertisement.  Because a cellular phone is a "computer" under the Guidelines, the plain language of the Guideline, as well as the application note that conditions use of the enhancement

to circumstances under which a computer or an interactive computer service *is used to communicate directly with the minor*, are met here. The Government, in any event, maintains that the application note to Section 2G1.3(b)(3)(B) is clearly at odds with the plain language of the Guideline, as the Eleventh Circuit has suggested and other circuits have found. But again, O.M.'s cell phone conversation with the potential customer satisfies the definition of the Guideline and its application note.

Finally, the Court should enhance Hill's base offense level for his role in the offense as an organizer, leader, manager, or supervisor under Section 3B1.1(c). This enhancement clearly applies to Hill because the facts of the case demonstrate that Hill's participation in the offense involved renting hotel rooms where the minors engaged in prostitution; utilizing a driver to transport the girls; and his maintaining a larger share of the proceeds in comparison to co-conspirators Clinton Saintvil and Nicole Saintvil. The Court, accordingly, should apply the enhancement as the PSR provides.

## II.
## PROCEDURAL BACKGROUND

### A. Indictment and Guilty Plea.

On August 28, 2012, a grand jury seated in the Northern District of Georgia returned an indictment charging Hill, along with co-defendants Fabian Terran Murray ("Murray") and Clinton Saintvil ("C. Saintvil"), aided and abetted by each other and by C. Saintvil's wife, Nicole Saintvil ("N. Saintvil") (identified as "N.V.", an unindicted co-conspirator), with conspiracy to commit child sex trafficking, in violation of Title 18, United States Code, Section 1594(c), and substantive counts of child sex trafficking, in violation of Title 18, United States Code, Section 1591(a)(1).  (Doc. 1.)  On April 18, 2014, Hill pleaded guilty to conspiracy to commit child sex trafficking as alleged in Count One of a second superseding indictment.  (Docs. 201, 324.)

### B. The Pre-sentence Report.

On July 14, 2014, the United States Probation Office issued its *Final* Pre-sentence Investigation Report ("PSR") in Hill's case.  (PSR.)  The PSR relied upon the 2013 edition of the United States Sentencing Guidelines Manual ("U.S.S.G." and the "Guidelines").  (PSR at ¶ 37.)  As to each of the three minor victims in the case, the PSR determined that the applicable sentencing guideline was Section 2G1.3(a)(2), in connection with Section 2X1.1, and that Hill's base offense

4

level is 30. (PSR at ¶ 38.)   The probation officer recommended an upward adjustment of two levels for undue influence of a minor under Section 2G1.3(b)(2)(B), and an upward adjustment of two levels because Hill's offense involved a commercial sex act under Section 2G1.3(b)(4)(B).  (PSR at ¶¶ 39, 41.)

The probation officer removed an upward adjustment of two levels based on whether the offense involved the use of a computer to solicit persons to engage in prohibited sexual conduct with minors under Section 2G1.3(b)(3)(B).  (PSR at ¶ 40.)  The probation officer also applied a two-level upward adjustment for the role in the offense under Section 3B1.1(c). (PSR at ¶ 45.) This resulted in an adjusted offense level of 36. (PSR at ¶¶ 47-67.)

The PSR then applied an upward adjustment of three levels under Section 2G1.3(d), Part D (Multiple Counts), because the offense involved three minors.  (PSR at ¶ 68-73.)  Last, the PSR applied a downward departure of three levels based on Hill's acceptance of responsibility under Sections 3E1.1(a) and (b), resulting in a total offense level of 36.  (PSR at ¶¶ 75-76.)  The PSR also determined that Hill's Criminal History Category is a Category IV.  (PSR at ¶ 86.)

# III.
## BRIEF STATEMENT OF THE CASE

### A. Conduct Related to O.M. and A.C..

On February 19, 2012, O.M. and A.C. were two 14-year-old girls who ran away from a residential care center for children in state custody.  (PSR at ¶ 12.)  On February 20, 2012, O.M. and A.C. met Hill, Murray, and C. Saintvil, at Fair Oaks Park in Marietta, Georgia.  (PSR at ¶ 12.)  Earlier that day, Hill called C. Saintvil to ask C. Saintvil to use his wife's (N. Saintvil) car to pick up the girls.  (PSR at ¶ 29.)  C. Saintvil knew that Hill and Murray planned to cause the girls to engage in prostitution.   (PSR at ¶ 29.)   C. Saintvil agreed to drive Hill and Murray to the park to pick up the girls, and the men did so with Hill driving.  (PSR at ¶¶ 12, 29.)

The men drove O.M. and A.C. to a nearby gas station where Hill and Murray purchased condoms while C. Saintvil waited with the girls in the car.  (PSR at ¶ 13.)  They then drove to the Extended Stay America hotel at 1967 Leland Drive, Marietta, Georgia, where Hill and Murray rented a room, while C. Saintvil again remained in the car with the girls.  (PSR at ¶ 13.)  O.M. asked C. Saintvil what she and A.C. would be doing, and he told them prostituting.  (PSR at ¶ 13.)  Hill paid C. Saintvil for the ride by giving C. Saintvil $5.00 and an amount of marijuana.  (PSR at ¶ 29.)  C. Saintvil then left the hotel.  (PSR at ¶ 30.)

Once inside the hotel room, Hill and Murray had sex with O.M. and A.C. and took nude photographs of them on Hill's cellular phone.  (PSR at ¶ 14.)  Hill used the phone to send these photographs to C. Saintvil and N. Saintvil.  (PSR at ¶ 14.)  N. Saintvil responded by telling Hill to take additional photos of O.M. and A.C. in their bras and underwear so that N. Saintvil could post the photographs on *Backpage*, a service providing free classified advertisements online.  (PSR at ¶ 14.)  N. Saintvil posted the photographs in *Backpage* ads for Hill and Murray, listing the ages of O.M. and A.C. as 18 years.  (PSR at ¶ 14.)  Hill paid N. Saintvil $9.00 for posting the advertisement.  (PSR at ¶ 32.)

Between February 20 and 22, 2012, Hill and Murray, with the help of C. Saintvil and N. Saintvil, offered O.M. and A.C. to clients for sexual acts.  (PSR at ¶ 15.) During this time, O.M. and A.C. told Hill and Murray that they were minors.  (PSR at ¶ 15.)  In fact, on one occasion, O.M. took a phone call from a customer who responded to the girls' advertisement and inadvertently told the caller that she was underage.  (PSR at ¶ 20.)  The caller ended the call, after which Hill – who with Murray and A.C. had been present during the incident – told O.M. to tell clients that she was 18 years old.  (PSR at ¶ 20.)  Hill also told the girls what fees to charge.  (PSR at ¶ 19, 22-23.)  O.M. and A.C. had two clients at the hotel, for which they were paid approximately $500, and one at a

condominium in Midtown Atlanta, for which they received approximately $500. (PSR at ¶ 15, 20, 22, 30.)  Hill required that the young women give him all of their earnings. (PSR at ¶ 15, 20.)

On the occasion that O.M. and A.C. traveled to the condominium, Hill again telephoned C. Saintvil to request a ride.  (PSR at ¶ 30.)  Hill, C. Saintvil, and N. Saintvil drove the girls to the condominium.  (PSR at ¶ 15.)  Hill and Murray earned $500 from the girls' date at the condominium.  (PSR at ¶ 30.)  Hill and Murray split the proceeds and each paid C. Saintvil $20.00 each for the use of his car.  (PSR at ¶ 30.)  Cobb County, Georgia, law enforcement officers discovered the girls at the Extended Stay Hotel on February 22, 2012, and took them into custody.  (PSR at ¶ 16.)

During a search of the hotel room, the officers recovered numerous items, including a firearm and condoms.  (PSR at ¶ 17.)  The investigators also obtained the cell phone that Hill had given to O.M. for use in contacting clients, as well as a receipt for the hotel room in Hill's name.  (PSR at ¶ 17.) A search of the cell phone revealed the nude and partially-clothed photographs of O.M. and A.C. used in the *Backpage* ads.  (PSR at ¶ 17.)

**B. Conduct Related to M.Q..**

On February 10, 2012, law enforcement officers had discovered M.Q., a 14-year-old girl, with Hill at a Comfort Inn in Marietta, Georgia.  (PSR at ¶ 24.) M.Q. told investigators that she ran away from home and had been living with her 16-year-old boyfriend prior to meeting Hill.  (PSR at ¶ 25.)  After meeting Hill, M.Q. and he shared text messages.  (PSR at ¶ 25.)  Eventually, M.Q. began staying with Hill after which he soon caused her to engage in prostitution. (PSR at ¶ 26.)  Hill used Internet advertisements depicting M.Q. to obtain customers for her.  (PSR at ¶ 26.)  As with O.M. and A.C., Hill used C. Saintvil's car to regularly transport M.Q. to different locations where she engaged in prostitution. (PSR at ¶¶ 26, 31.)  On one occasion, C. Saintvil drove Hill and M.Q. to a Motel 6, where M.Q. engaged in prostitution.  (PSR at ¶ 31.)  And on another occasion, C. Saintvil allowed Hill to use his car to drive M.Q. to another date for prostitution. (PSR at ¶ 31.)

**IV.**
**ARGUMENT AND CITATIONS OF AUTHORITY**

**A.    THE COURT SHOULD IMPOSE A BASE OFFENSE LEVEL OF 30 UNDER SECTIONS 2X1.1 AND 2G1.3(a)(2) OF THE GUIDELINES BASED ON THE SUBSTANTIVE OFFENSE CONDUCT.**

The Court should calculate Hill's base offense level for a violation of Title 18, United States Code, Section 1594(c), based on the underlying conduct of the

offense pursuant to Section 2X1.1 of the Guidelines.  In this case, Hill completed the acts that constitute a substantive offense of minor sex trafficking under Title 18, United States Code, Sections 1591(a)(1) and (b)(2).  His base offense level, therefore, should be 30 pursuant to U.S.S.G. Section 2G1.3(a)(2).

Hill pleaded guilty to a conspiracy charge under Section 1594(c) in violation of the underlying offense of sex trafficking of minors under Title 18, United States Code, Section 1591(a)(1).  According to U.S.S.G. Section 2X1.1(a), the base offense level for a conspiracy violation is "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  Section 2X1.1(c)(1) provides that this is so unless a "conspiracy is expressly covered by another offense guideline section . . . ."  (emphasis added).

There is no specific offense guideline that "expressly" covers a Section 1594 offense.  In fact, Section 1594 is not even included in Appendix A of the Guidelines manual.  Nor does the "Statutory Provisions" section of the commentary at Section 2G1.3 reference a Section 1594 violation.  As a result, Hill should be sentenced under U.S.S.G. Section 2X1.1, which provides that the base offense level is "from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be

established with reasonable certainty."   U.S.S.G. § 2X1.1(a).   The "substantive offense" is defined by the commentary at Section 2X1.1, cmt. n.2, as "the offense that the defendant was convicted of conspiring to commit."   In this case, the substantive offense underlying the conspiracy is Title 18, United States Code, Sections 1591(a)(1) and (b)(2).   The relevant U.S.S.G. provision for this substantive offense is Section 2G1.3(a)(2), which implements a base offense level of 30.

While as a result of the plea agreement Hill was convicted of a Section 1594(c) offense, his conspiracy conviction is sufficient to reach the offense of conviction language for a "substantive offense" as defined under Section 2X1.1 cmt. n.2. This precise issue was considered by another district court in *United States v. Li*, 2013 WL 638601 (D. N. Mar. I. 2013), where the Court held that the base offense levels at Section 2G1.3 should be applied to a Section 1594(c) conspiracy conviction resulting from Section 1591 conduct. *Id.* at 3.   The *Li* Court reasoned that the commentary to Section 2X1.1, stating that the "base offense level will be the same as that for the substantive offense," as well as the conduct-based approach of the Sentencing Guidelines, "compel[s] the conclusion" that such an application is required. *Id.*

Additionally, undersigned counsel for the Government consulted with colleagues in other districts who have confronted the issue concerning the base offense level for a Section 1594(c) conviction.  We learned that the following districts have also applied the underlying base offense levels at Sections 2G1.1 and 2G1.3 for a Section 1594(c) conviction: *United States v. Cortes-Castro*, 511 F. App'x 942, 943-44 (11th Cir. 2013) (per curiam) (referencing the use of Section 2G1.1(a)(1) as the base offense level for the defendants' Section 1594(c) conviction (Southern District of Florida)); *United States v. Bonifacio*, criminal case no. S14 13-CR-31-02-KBF (Southern District of New York, May 30, 2014); and *United States v. Singh*, criminal case no. CR-11-00883-1-PJH (Northern District of California, April 18, 2012).

And while under Section 2X1.1(b)(2) a conspiracy charge may involve a decrease by three levels, in this case Hill "completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense."  Specifically, as outlined in the PSR:

- C. Saintvil acted as the driver for Murray and Hill to transport O.M. and A.C. for prostitution, in or about February 2012;

- The defendants used C. Saintvil's car to transport the girls from a park to an extended stay hotel;

- Before arriving at the hotel, the men first drove the girls from the park to a BP gas station, where Hill and Murray bought condoms;

- After leaving the BP gas station, the men drove the girls in C. Saintvil's car to the extended stay hotel, where Murray and Hill housed the girls and out of which the men caused the girls to engage in prostitution;

- Hill used a cell phone to photograph the minors to create internet ads to solicit customers for the girls, and Hill sent those images of the minors to C. Saintvil and his wife, "N.V.", who helped the Defendants create the internet ads;

- Hill used C. Saintvil's car to drive Hill, A.C. and O.M. from the extended stay hotel to a condominium in "Midtown" where the girls had an appointment with a customer;

- Upon returning to the extended stay hotel with Hill, A.C. and O.M. after the girls' appointment, C. Saintvil saw Murray and Hill split the money that the girls had earned; then, after dividing the money, Murray and Hill each paid C. Saintvil for transporting the girls to the appointment;

- Prior to causing O.M. and A.C. to engage in prostitution, Hill had met M.Q. and, in or about February 2012, also caused M.Q. to engage in prostitution;

- N. Saintvil helped Hill to post advertisements of M.Q. online that Hill used to obtain clients for M.Q.; and

- C. Saintvil drove Hill and M.Q. to locations where Hill caused M.Q. to engage in prostitution.

Under Section 2X1.1(b)(2), therefore, no decrease is warranted because Hill committed the acts that form the basis of the underlying substantive conduct.

The Court, accordingly, should calculate a base offense level of 30 for Hill under Section 2G1.3(a)(2).

**B. THE COURT SHOULD IMPOSE A TWO-LEVEL ENHANCEMENT OF SAINTVIL'S BASE OFFENSE LEVEL UNDER U.S.S.G. SECTION 2G1.3(b)(3)(B) BECAUSE THE OFFENSE INVOLVED USE OF A COMPUTER OR COMPUTER SERVICE TO SOLICIT PERSONS TO ENGAGE IN COMMERCIAL SEX ACTS WITH THE MINORS.**

Second, the Court should apply an enhancement of Hill's base offense level for use of a computer or interactive computer service to solicit clients for the minors here under Section 2G1.3(b)(3)(B) of the Guidelines. Hill admits that he and Murray used online advertisements of the minors on *Backpage*, an internet website, to obtain commercial sex clients for the girls. And at least on one occasion, it is not disputed that the offense involved use of a computer device, that is, a cell phone, where a potential customer spoke directly to O.M. to arrange a date based on the girls' online advertisement. Therefore, the enhancement should be applied.

The specific offense characteristic at Section 2G1.3(b)(3)(B) of the Guidelines applies where the offense involved use of a computer or interactive computer service to "entice, encourage, offer or solicit a person to engage in prohibited sexual conduct with the minor." Under the Guidelines, a "computer" includes a cellular phone. *See United States v. Kramer*, 631 F.3d 900, 902-03 (8th Cir. 2011)

14

(defining a cell phone as a computer for purposes of the Guidelines, pursuant to 18 U.S.C. § 1030(e)(1)); U.S.S.G. § 2G1.3. cmt. n.1 (defining "computer" as having the meaning given to the term in 18 U.S.C. § 1030(e)(1)).

It is true, however, that Section 2G1.3(b)(3)(B) includes an application note – Application Note 4 – that states that Subsection (b)(3) "is intended to apply only to the use of a computer or an interactive computer service *to communicate directly with the minor or with a person who exercises custody, care, or supervisory control of the minor*." The meaning of this application note is clearly inconsistent with the plain meaning of the sentencing provision at Section 2G1.3(b)(3)(B) which, simply and unambiguously, states that  the enhancement applies where "the offense involved use of a computer or an interactive computer service" to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor." U.S.S.G. § 2G1.3((b)(3)(B). But the evidence in this case satisfies the wording of both the Guideline as well as the application note.

Here, Hill and Murray took photographs of O.M. and A.C. on Hill's cellular phone. (PSR at ¶ 14.) Hill used the phone to send these photographs to C. Saintvil and N. Saintvil. (PSR at ¶ 14.) N. Saintvil posted the photographs in *Backpage* ads for Hill and Murray. (PSR at ¶ 14.) On one occasion, O.M. took a phone call from a customer who responded to the girls' *Backpage* advertisement

15

and inadvertently told the caller that she was underage. (PSR at ¶ 20.) The caller ended the call. Hill – who with Murray and A.C. had been present during the incident – then told O.M. to tell clients that she was 18 years old. (PSR at ¶ 20.) Therefore, on this occasion at least, the offense involved "use of a computer or interactive computer service" for someone to communicate directly with a minor, O.M., to solicit her for prohibited sexual conduct, as Sections 2G1.3(b)(3)(B), and Application Note 4 of the Guideline, provide.

While Hill did not participate on the call, the sentencing enhancement makes no mention of a defendant's or a participant's use of a computer or computer interactive service but, instead, refers only to whether the offense involved such usage. *See* U.S.S.G. § 2G1.3(b)(3)(B); *see also United States v. Royal,* 442 F. App'x 794, 798 (4th Cir. 2011) (finding that the "enhancement applies even if a defendant did not personally use the computer since the enhancement 'makes no mention of the defendant, but focuses on the mechanism involved in the offense.'") (quoting *United States v. Dotson*, 324 F.3d 256, 259 (4th Cir. 2003)).

In *United States v. Royal*, the Fourth Circuit found that the district court properly applied the enhancement in a sex trafficking prosecution even where the defendant, through a third party, used the internet to solicit unlawful sexual activity with a minor. 442 F. App'x at 798-99. The defendant in *Royal* objected to

the application of the enhancement, arguing that he had not directly communicated with the minor using a computer or interactive computer device. *Id*. at 799.   The Fourth Circuit rejected that argument, finding that the enhancement was properly applied where "a computer 'facilitated' a minor's engage[ment] in prohibited sexual conduct."  *Id*. (quoting *United States v. Lay*, 583 F.3d 436, 447 (6th Cir. 2009)).  The *Royal* Court concluded that the "enhancement applies even if a defendant did not personally use the computer since the enhancement 'makes no mention of the defendant, but focuses on the mechanism involved in the offense."  *Id*. at 798 (quoting *United States v. Dotson*, 324 F.3d 256, 259 (4th Cir. 2003)).

Likewise, in *United States v. Winbush*, 524 F. App'x 914 (4th Cir. 2013), the Fourth Circuit applied the enhancement in a child exploitation case where one of the defendant's adult prostitutes posted online advertisements of the minor victim used to recruit customers for the girl.  *Id*. at 915-16.  The Fourth Circuit found that the district court properly applied the sentencing enhancement at Section 2G1.3(b)(3)(B) because the adult prostitute, "working in concert with [the defendant], used a computer to advertise the minor on the internet and solicit customers for her."  *Id*. at 916.  Such conduct, the Court concluded, "fell squarely

within the ambit" of the Guideline, notwithstanding the "inconsistent" language included at Application Note 4 of the Guideline. *See* U.S.S.G. § 2G1.3. cmt. n.4.

Application Note 4 of Section 2G1.3(b)(3)(B) states that Subsection (b)(3) "is intended to apply only to the use of a computer or an interactive computer service to communicate directly with the minor or with a person who exercises custody, care, or supervisory control of the minor." The meaning of this application note is clearly inconsistent with the plain meaning of the sentencing provision at Section 2G1.3(b)(3)(B) which, simply and unambiguously, states that the enhancement applies where "the offense involved use of a computer or an interactive computer service" to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor." U.S.S.G. § 2G1.3((b)(3)(B).

In *United States v. Madkins*, 390 F. App'x 849 (11th Cir. 2010), the Eleventh Circuit noted that a "persuasive case has been made that the commentary [at U.S.S.G. § 2G1.3. cmt. n.4] is at odds with the plain language" of Section 2G1.3(b)(3)(B). *Id.* at 852. In *Madkins*, a defendant convicted of child sex trafficking placed ads of the minor victims on *Craigslist*, an internet website. But nothing in the record indicated that the defendant had used a computer or interactive computer device to "communicate directly" with the minors or "a person who exercised care or custody of them", as the application note provides.

18

*Id.* at 851.  The Court, therefore, observed that the district court had "arguably" erred in applying this enhancement.  *Id.* at 851.

However, nothing in the Guideline or in the application note states that the enhancement requires a showing that a defendant or participant must directly participate in the communication or computer usage.  The enhancement only requires proof that <u>the offense</u> involved the prohibited use.  Pointedly, the *Madkins* Court chose to decide the defendant's challenge to his sentence on the narrower issue of whether the district court would have imposed a different sentence but for the court's application of the enhancement at Section 2G1.3(b)(3)(B).  *Id.*  The Court then affirmed the sentence.  *Id.*

In sum, Section 2G1.3(b)(3)(B) is incomprehensible if read to require that it applies only if a defendant, or other person exercising care or control of the minor, communicated directly with the minor.  The plain language of the enhancement states that it applies to an offense involving use of a computer or an interactive computer service to "entice, encourage, offer, or solicit <u>a person</u> to engage in prohibited sexual conduct with a minor."  U.S.S.G. § 2G1.3((b)(3)(B). (emphasis added).  The commentary, accordingly, is clearly at odds with the plain language of the enhancement, as the Eleventh Circuit suggested in *Madkins*, and as the Fourth Circuit found in *Winbush.*

19

In any event, here, the offense involved the use of a computer device for a person to directly communicate with a minor, O.M., to solicit unlawful sexual activity with the child.  Hill, in his sentencing memorandum, appears to agree that these facts would support application of the enhancement.  *See* Hill's Sentencing Memorandum, at p.2.  Hill cites to *United States v. Patterson*, 576 F.3d 431 (7th Cir. 2009), for the proposition that this case, like the facts in *Patterson*, do not show that "computers were used to 'communicate directly' with the victim . . . .'"  *Id.* at 443.  But the facts in this case are distinguishable from *Patterson* – both legally and factually.  This is true because (1) the cellular phone used by O.M. is a "computer" for purposes of the Guidelines, and (2) O.M. communicated directly with a customer who was responding to Hill's online advertisement, as Hill acknowledges in his objections to the PSR.  *See* Hill's Objections to ¶ 20 of the PSR at p. 3 (confirming accuracy of the call and the circumstances under which it was made).  Hill arranged for O.M. to use the cellular phone for this purpose. The Court, for these reasons, should apply the sentencing enhancement here.

### C. THE COURT SHOULD IMPOSE A TWO-LEVEL ENHANCEMENT OF HILL'S BASE OFFENSE LEVEL UNDER U.S.S.G. SECTION 3B1.1(c) BECAUSE HE ACTED AS AN ORGANIZER, MANAGER, LEADER, OR SUPERVISOR.

Finally, the Court should enhance Hill's base offense level for his role in the offense as an organizer, leader, manager, or supervisor under Section  3B1.1(c).

This enhancement clearly applies to Hill because the facts of the case demonstrate that Hill's participation in the offense involved renting hotel rooms where the minors engaged in prostitution; utilizing a driver to transport the girls; and his maintaining a larger share of the proceeds in comparison to co-conspirators C. Saintvil and N. Saintvil. The Court, accordingly, should apply the enhancement as the PSR provides.

Section 3B1.1 of the Sentencing Guidelines establishes a three-tier system for recognizing the aggravating role of certain defendants in criminal enterprises that involve more than one person. U.S.S.G. § 3B1.1(a)-(c). The district court may enhance a defendant's sentence by two to four points depending upon the nature of the defendant's role in the criminal activity and the number of participants involved. U.S.S.G. § 3B1.1(a)-(c).

The district court may increase a defendant's base offense level by two points pursuant to Section 3B1.1(c) where a defendant was an organizer, leader, manager, or supervisor in the criminal activity, but where the scope of the criminal conduct did not involve five or more criminal participants (and was not otherwise extensive). U.S.S.G. § 3B1.1(c). This enhancement applies where a defendant manages or supervises "one or more participants." U.S.S.G. § 3B1.1, comment. (n.2). Thus, application of section 3B1.1(c) requires the sentencing

court to determine the role of the defendant in the criminal activity, and to consider the number of participants involved.

"The determination of the defendant's role in the offense is to be made on the basis of all conduct within the scope of U.S.S.G. § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the counts of conviction." U.S.S.G., Ch. 3, Pt. B, intro. comment.  In assessing a defendant's leadership role, the district court may consider various factors, including the defendant's "exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control exercised over others." § 3B1.1, comment. (n.4).

The assertion of control or influence over only one participant is sufficient to support a role enhancement as an organizer, manager, leader, or supervisor. *United States v. Williams*, 457 F. App'x 840, 842-43 (11th Cir. 2012) (citing *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999)); *United States v. Lozano*, 490 F.3d 1317, 1323 (11th Cir. 2007) (affirming an enhancement where the defendant instructed at least one coconspirator to engage in criminal conduct); *United States*

*v. Flores-Sotelo*, 343 F. App'x 404, 409-10 (11th Cir. 2009) (applying enhancement where the defendant utilized a driver).

Here, the PSR included a two-level enhancement under section 3B1.1(c) for Hill's role as an "organizer, leader, manager, or supervisor" of the criminal activity. (PSR at ¶ 45.) The probation officer recommended the upward adjustment based on Hill having "exercised decision-making authority" and having "directed others and claimed right to a larger share of the fruits of the crime." (PSR at ¶ 45.)

This enhancement is supported by the facts outlined in the PSR that are not in dispute. Those facts include:

- Hill's exercise of decision-making authority in renting the motel where the men housed O.M. and A.C.;

- Hill's exercise of decision-making authority in instructing the minors about what fees to charge;

- Hill's recruitment of C. Saintvil and N. Saintvil for help in transporting O.M., A.C. and M.Q.;

- Hill's recruitment of C. Saintvil and N. Saintvil for help in creating and posting the internet advertisements of the girls;

- Hill's degree in organizing the criminal conduct by providing O.M. with a cellular phone for use in dealing with clients;

23

- Hill's degree in organizing the criminal conduct by obtaining the earnings from the minors, while paying C. Saintvil and N. Saintvil and minimal share of the earnings; and

- Hill's degree in organizing the criminal conduct by paying N. Saintvil for posting the advertisements.

In *United States v. Robinson*, 508 F. App'x 867 (11th Cir. 2013), the Eleventh Circuit affirmed the same enhancement in a case that involved facts very similar to Hill's case. *Id*. at 870. In *Robinson*, the Court found that the enhancement had been correctly applied based on the defendant's influence over an unindicted co-conspirator who assisted in photographing the minor and placing advertisements online for prostitution activities. *Id*. The Court also observed that the defendant utilized his co-conspirator to schedule appointments and to transport the minor to meet men for commercial sexual activities. *Id*. The Court also noted that the defendant controlled the proceeds derived from the exploitation of a minor. *Id*. In sum, the Eleventh Circuit agreed with the district court's observation that the defendant was "running the show." *Id*.

But Hill insists that he did not recruit C. Saintvil and N. Saintvil; instead, they were merely "friends and acquaintances" who aided him in sex trafficking the minors here.   (PSR at ¶ 55.)   Hill claims that the Saintvil's were hardly subordinates, and that they were more familiar with posting ads on *Backpage*

24

and, therefore, willing to lend their assistance – particularly since he had no car. (PSR at ¶ 55.)  The Court should reject these grounds as a basis for applying the enhancement because Hill clearly managed the criminal conduct here – at the very least – as the Guideline broadly contemplates.

## V.
## <u>CONCLUSION</u>

For all these reasons, the Court should calculate a base offense level of 30 in Hill's case pursuant to United States Sentencing Guidelines Sections 2X1.1 and 2G1.3(a)(2), as the Pre-sentence Report now provides.  Second, the Court should apply a two-level enhancement for use of a computer to solicit persons to engage in unlawful sex acts with a minor under Section 2G1.3(b)(3)(B) of the Guidelines. And the Court should apply a two-level enhancement based on Hill's role in the offense as an organizer, leader, manager, or supervisor under Section 3B1.1(c) of the Guidelines.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


<u>/S/RICHARD S. MOULTRIE, JR.</u>
RICHARD S. MOULTRIE, JR.
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 527275

_/S/PHYLLIS CLERK_
PHYLLIS CLERK
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 095325

600 U.S. Courthouse
75 Spring St., SW
Atlanta, GA  30303
404/581-6280 (Tel.)
404-581-6156 (Fax)

<u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1C in Book Antiqua font, 13-point type.  This is to also certify that the undersigned has this date filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

      Andrew C. Hall, Esq.
      150 E. Ponce de Leon Avenue
      Suite 450
      Decatur GA  30030

This 9th day of July, 2014.

      */s/Richard S. Moultrie, Jr.*
      Richard S. Moultrie, Jr.
      Assistant U.S. Attorney
      Richard.Moultrie@usdoj.gov